**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| DISCOVERY GLOBAL CITIZENS MASTER FUND, LTD., et al., | Civil Action No. 16-7321(MAS)(LHG) |
| Plaintiffs, | **(ORAL ARGUMENT REQUESTED)** |
| v. | Motion Day: September 5, 2017 |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., |  |
| Defendants. |  |

*Captions continue on the next pages*

---

**OMNIBUS REPLY BRIEF IN SUPPORT OF
VALEANT'S PARTIAL MOTIONS TO DISMISS PLAINTIFFS' COMPLAINTS**

---

Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Telephone:  (973) 848-8615
Facsimile:  (973) 297-6615

Paul C. Curnin (*pro hac vice*)
Jonathan K. Youngwood (*pro hac vice*)
Craig S. Waldman (*pro hac vice*)
Daniel J. Stujenske (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Valeant Pharmaceuticals International, Inc.*

| | |
|---|---|
| MSD TORCHLIGHT PARTNERS, L.P., et al., | **Civil Action No. 16-7324(MAS)(LHG)** |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| BLUEMOUNTAIN FOINAVEN MASTER FUND L.P., et al., | **Civil Action No. 16-7328(MAS)(LHG)** |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| INCLINE GLOBAL MASTER LP, et al., | **Civil Action No. 16-7494(MAS)(LHG)** |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |

| | |
|---|---|
| VALIC COMPANY I, et al., | **Civil Action No. 16-7496(MAS)(LHG)** |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| JANUS ASPEN SERIES, et al., | **Civil Action No. 16-7497(MAS)(LHG)** |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT ......................................................................................................2

I.      PLAINTIFFS' SECTION 18 CLAIMS FAIL ...............................................2

        A.      Plaintiffs Fail to Meet Section 18's Strict Reliance Requirement .........2

        B.      Plaintiffs Assert Claims Barred By Section 18's Statute Of Repose ......5

II.     PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIMS FAIL ..........7

        A.      The Negligent Misrepresentation Claims Are Preempted By SLUSA ...7

        B.      Even If Not Preempted, Plaintiffs' Negligent Misrepresentation Claims
                Fail ......................................................................................9

III.    THE FACTS UNDERLYING PLAINTIFFS' ALLEGATIONS WERE
        DISCLOSED BY OCTOBER 30, 2015 .....................................................10

CONCLUSION ..................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Amorosa v. Ernst & Young LLP*,
    682 F. Supp. 2d 351 (S.D.N.Y. 2010) ....................................................................7

*Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*,
    315 F. Supp. 2d 666 (E.D. Pa. 2004) ...............................................................3, 12

*Bogart v. Nat'l Community Banks, Inc.*,
    1992 WL 203788 (D.N.J. Apr. 25, 1992)...............................................................9

*Broadway Gate Master Fund, Ltd. v. Ocwen Fin Corp.*,
    No. 16-cv-80056 (S.D. Fla. June 29, 2016)...........................................................6

*CALPERS v. ANZ Sec., Inc.*,
    137 S. Ct. 2042 (2017) .......................................................................................5, 6

*Cast Art Indus., LLC v. KPMG LLP*,
    209 N.J. 208 (2012)................................................................................................9

*CTS Corp. v. Waldburger*,
    134 S. Ct. 2175 (2014) ..........................................................................................5

*Dekalb Cty. Pension Fund v. Transocean Ltd.*,
    817 F.3d 393 (2d Cir. 2016) ..............................................................................2, 5

*Gould v. Winstar Commc'ns*,
    692 F.3d 148 (2d Cir. 2012) ..................................................................................4

*H. Rosenblum, Inc. v. Adler*,
    93 N.J. 324 (1983)..................................................................................................9

*In re Able Labs. Sec. Litig.*,
    2008 WL 1967509 (D.N.J. Mar. 24, 2008) ...........................................................3

*In re Adelphia Comc'ns Corp. Sec. & Deriv. Litig.*,
    2005 WL 1679540 (S.D.N.Y. Jul. 18, 2005).........................................................6

*In re Alstom SA*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005)....................................................................2

*In re Bear Stearns Co., Inc. Sec., Deriv., & ERISA Litig.*,
    995 F. Supp. 2d 291 (S.D.N.Y. 2014)................................................................2, 6

*In re Enzymotec Sec. Litig.*,
    2015 WL 8784065 (D.N.J. Dec. 15, 2015)...........................................................12

*In re Exxon Mobil Corp. Sec. Litig.*,
    500 F.3d 189 (3d Cir. 2007) ........................................................................5

*In re MDC Holdings Sec. Litig.*,
    754 F. Supp. 785 (S.D. Cal. 1990) ..............................................................4

*In re Merck & Co., Inc.*,
    2011 WL 3444199 (D.N.J. Aug. 8, 2011) ...................................................12

*In re Midlantic Corp. Sec. Litig.*,
    758 F. Supp. 226 (D.N.J. 1990) ..................................................................9

*In re ORFA Sec. Litig.*,
    654 F. Supp. 1449 (D.N.J. 1987) ................................................................9

*In re Stone & Webster, Inc., Sec. Litig.*,
    253 F. Supp. 2d 102 (D. Mass. 2003) .........................................................2

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006) ...................................................................2, 3

*In re Tellium Inc., Sec. Litig.*,
    2005 WL 1677467 (D.N.J. June 30, 2005)...................................................4

*In re WorldCom, Inc. Sec. Litig.*,
    308 F. Supp. 2d 236 (S.D.N.Y. 2014) .........................................................8

*Instituto De Prevision Militar v. Merrill Lynch*,
    546 F.3d 1340 (11th Cir. 2008) ..................................................................8

*Kaufman v. I-Stat Corp.*,
    165 N.J. 94 (2000)....................................................................................10

*Kaufman v. I-Stat Corp.*,
    735 A.2d 606 (N.J. App. Div. 1999) ......................................................9, 10

*Kelley v. Rambus, Inc.*,
    2008 WL 1766942 (N.D. Cal. April 17, 2008).............................................6

*Klawonn v. YA Global Invs., L.P.*,
    2016 WL 5923435 (D.N.J. May 6, 2016)....................................................5

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
    842 F. Supp. 2d 587 (S.D.N.Y. 2012).........................................................8

*Lindner Dividend Fund, Inc. v. Ernst & Young*,
    880 F. Supp. 49 (D. Mass. 1995) ...............................................................6

*LLDVF v. Dinicola*,
    2010 WL 3210613 (D.N.J. Aug. 12, 2010) ..............................................................4

*Maverick Fund, L.D.C. v. Comverse Tech., Inc.*,
    801 F. Supp. 2d 41 (E.D.N.Y. 2011) ....................................................................4

*Montclair v. Ramsdell*,
    107 U.S. 147 (1883) ..............................................................................................8

*People Express Airlines v. Consol. Rail Corp.*,
    100 N.J. 246 (1985) ..............................................................................................9

*Pinker v. Roche Hldgs.*,
    292 F.3d 361 (3d Cir. 2002) ..............................................................................12

*Prudential Ins. Co. of Am. v. Bank of Am. Nat'l Ass'n*,
    2015 WL 502039 (D.N.J. Feb. 5, 2015) ............................................................9, 10

*Rowinski v. Salomon Smith Barney Inc.*,
    398 F.3d 294 (3d Cir. 2005) ................................................................................8

*Semerenko v. Cendant Corp.*,
    223 F.3d 165 (3d Cir. 2000) ..........................................................................11, 12

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014) ..............................................................2, 3, 4

*Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*,
    775 F. Supp. 2d 227 (D. Mass. 2011) ..................................................................6

*Stichting Pensioenfonds ABP v. Merck & Co.*,
    2012 WL 3235783 (D.N.J. Aug. 1, 2012) ............................................................7

*Urbach v. Sayles*,
    779 F. Supp. 351 (D.N.J. 1991) ..........................................................................9

*Ventura v. AT&T Corp.*,
    2006 WL 2627979 (S.D.N.Y. Sept. 13, 2006) ......................................................8

*White v. H & R Block, Inc.*,
    2004 WL 1698628 (S.D.N.Y. July 28, 2004) ......................................................11

*WM High Yield Fund v. O'Hanlon*,
    2005 WL 6788446 (E.D. Pa. May 13, 2005) ........................................................3

**Statutes**

15 U.S.C. § 78bb ........................................................................................................7

15 U.S.C. § 78r ..........................................................................................................5

N.J.S.A. 2A:53A–25 ...................................................................................................9

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................2, 3

**Other Authorities**

Restatement (Second) of Torts § 552 .......................................................................10

Restatement (Third) of Torts: Liab. for Econ. Harm § 5, TD No. 1 (2012) ...............10

## PRELIMINARY STATEMENT

The Opposition cannot salvage the New Jersey common law causes of action and Section 18 claims that Plaintiffs admit are the "fringe" of their case.  The Opposition also fails to provide a basis for this Court to extend liability for purchases of Valeant securities after October 2015. These claims should be dismissed so these cases can proceed in a narrowly focused manner.

*First*, Plaintiffs concede that their Section 18 claims do not allege *which* statements they relied upon when making specific securities purchases.  Any attempt to allege reliance on a nonspecific, wholesale basis, as Plaintiffs have done here, is contrary to the Third Circuit's *Suprema* decision and should be dismissed.

*Second*, Plaintiffs concede that many of the purchases upon which their Section 18 claims are based are older than the strict three-year statute of repose—which the Supreme Court recently held cannot be equitably tolled.  Plaintiffs' attempt to recharacterize the statute of repose as a statute of limitations in order to avoid this result is contrary to extensive precedent and undermined by the other opt-out plaintiffs in these cases who describe the three-year limitation as a statute of repose.

*Third*, Plaintiffs cannot distinguish this District's recent authority demonstrating that their negligent misrepresentation claims are preempted by SLUSA, and unsustainable under New Jersey law.

*Fourth*, Plaintiffs' 10(b) claims are properly limited to exclude purchases after October 2015, when Valeant announced the formation of an ad-hoc committee to review allegations about Philidor.  Plaintiffs fail to distinguish the Third Circuit's *Semerenko* decision, which held that the announcement of an internal investigation to review potential accounting violations foreclosed any reliance on prior alleged accounting misstatements.

For these reasons, Defendants' motions should be granted with prejudice.

## ARGUMENT

I.   **PLAINTIFFS' SECTION 18 CLAIMS FAIL**

   A.   **Plaintiffs Fail to Meet Section 18's Strict Reliance Requirement**

Plaintiffs concede they have failed to "identify . . . *specific transactions* that ensued as a result of Plaintiffs' purported 'eyeball' reliance on [the filings]." *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd*., 33 F. Supp. 3d 401, 444 (S.D.N.Y. 2014) (emphasis added); (Opp'n at 10). Plaintiffs do not "link [their] review of any particular statements . . . to any actual purchases of [Valeant] securities." *In re Bear Stearns Co., Inc. Sec., Deriv., & ERISA Litig*., 995 F. Supp. 2d 291, 309 (S.D.N.Y. 2014). These concessions are dispositive, *In re Suprema Specialties, Inc. Sec. Litig*., 438 F.3d 256, 284 (3d Cir. 2006), and Plaintiffs' attempts to avoid this requirement are unavailing.

*First,* Plaintiffs' assertion that Rule 9(b) does not apply to their Section 18 claims, (Opp'n at 10, 14), is contrary to the weight of authority. *See In re Alstom SA*, 406 F. Supp. 2d 433, 483 n.45 (S.D.N.Y. 2005) ("[C]ourts in [the Second] Circuit have without hesitation applied Rule 9(b)'s heightened pleading requirements to Section 18 claims."); *In re Stone & Webster, Inc., Sec. Litig.*, 253 F. Supp. 2d 102, 135 (D. Mass. 2003) ("Pleadings under section 18 must satisfy the same particularity requirements of Fed. R. Civ. P. 9(b) as those under Section 10(b)."). Plaintiffs are simply wrong that Section 18 is not a fraud claim. (Opp'n at 10.) "Congress . . . intended Section 18(a) to reach only fraudulent misrepresentations, rather than negligent or innocent ones." *Dekalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 407 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2326 (2017).[1]

Plaintiffs also argue that they satisfied Rule 9(b) because "[u]ncovering specific factual

---

[1] In *Suprema*, the Third Circuit found it unnecessary to decide whether "the heightened pleading requirements of Rule 9(b) apply to a Section 18 claim." 438 F.3d at 283 n.13.

information about Plaintiffs' particular trades is what discovery is for." (Opp'n at 15.) To the contrary, Rule 9(b) applies at the pleading stage precisely to avoid unnecessary discovery where Plaintiffs cannot meet its particularity requirements.

*Second*, Plaintiffs acknowledge that *Suprema* requires them to "plead actual reliance on specific statements." 438 F.3d at 283; *see* Opp'n at 10.  But they mischaracterize this requirement as meaning only that Plaintiffs must allege specific misstatements.  (Opp'n at 10.) *Suprema* concerns **reliance**, which as the Third Circuit has ruled requires that allegations "show the requisite **causal nexus** between . . . purchases of securities and specific statements."  438 F.3d at 283–84 (emphasis added); *see also Special Situations Fund III*, 33 F. Supp. 3d at 445 (rejecting argument that *Suprema* "only requires that plaintiffs specifically identify the statements on which they relied").  In order to avoid dismissal, Plaintiffs heavily rely on *In re Able Labs. Sec. Litig.*, but even that decision requires plaintiffs to allege "actual reliance on the specific misrepresentations themselves" and, "*[i]n addition* . . . a causal nexus between the sale of a security" and such reliance.  2008 WL 1967509, at *25 (D.N.J. Mar. 24, 2008) (citing *Suprema*, 438 F.3d at 284) (emphasis added).  Plaintiffs cannot satisfy *Suprema* merely by alleging a list of misstatements, separately alleging a list of securities transactions, and leaving the Court or Defendants to figure out the rest.

Plaintiffs' other in-circuit cases are no more helpful.  *WM High Yield Fund v. O'Hanlon*, for example, predates *Suprema* and relies on a now-abrogated decision that incorrectly equated the reliance requirements of Sections 10(b) and 18.  2005 WL 6788446, at *11 (E.D. Pa. May 13, 2005) (citing *Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*, 315 F. Supp. 2d 666, 678 (E.D. Pa. 2004)).  *LLDVF, L.P. v. Dinicola*, as another example, dismissed Section 18

claims, like those here, that "fail[ed] to clearly allege how the loss was *caused* by the alleged misstatements and omissions." 2010 WL 3210613, at *10 (D.N.J. Aug. 12, 2010).[2]

Plaintiffs concede that "the exhibits to many of the Plaintiffs' Complaints list purchases made before the first alleged Exchange Act filing," (Opp'n at 15), meaning they have alleged reliance on documents that ***did not exist*** when purchases were made. Their excuse—that the Complaint has a disclaimer alleging reliance only "to the extent each such document was on file with the SEC at the time," (Opp'n at 15),—lays bare that they have made no effort to comply with *Suprema's* requirements. By simply listing numerous SEC filings and listing hundreds of purchases without reference to the specific SEC filings to which they are tied, Plaintiffs have engaged in classic puzzle pleading. *See In re Tellium Inc., Sec. Litig.*, 2005 WL 1677467, at *15 n.14 (D.N.J. June 30, 2005) ("Plaintiffs' redundant, puzzle pleading style, and lack of attempt at clarification in the briefing, is manifestly unfair to the Court").

Unable to meet the relevant standard, Plaintiffs emphasize that "flesh-and-blood human beings" reviewed Valeant's SEC filings. (Opp'n at 1, 13.) But ***who*** reviewed securities filings has nothing to do with the requirement that a Plaintiff allege ***which*** filings were relied upon for ***which*** purchases. If pleading that "flesh-and-blood-human beings" read a document satisfied Section 18's strict reliance requirement, it would negate Section 18's narrow purposes. *See Special Situations Fund III*, 33 F. Supp. 3d at 439.

---

[2] Nor do Plaintiffs' out-of-circuit cases remedy their insufficient pleadings. *Gould v. Winstar Commc'ns, Inc.* involved a *single misstatement*, thereby creating a simple link between the plaintiffs' purchases and that misstatement. 692 F.3d 148, 161 (2d Cir. 2012). *Maverick Fund, L.D.C. v. Comverse Tech., Inc.*, is an outlier decided before the S.D.N.Y. cases cited in Valeant's opening brief, with which Plaintiffs do not engage. 801 F. Supp. 2d 41 (E.D.N.Y. 2011). And *In re MDC Holdings Sec. Litig.* dismissed a Section 18 claim precisely because it did not meet the "express reliance requirement." 754 F. Supp. 785, 798 (S.D. Cal. 1990).

**B.      Plaintiffs Assert Claims Barred By Section 18's Statute Of Repose**

Plaintiffs do not dispute that claims arising out of at least 169 purchases of Valeant securities are untimely under Section 18's requirement that claims be brought "within one year after the discovery of the facts constituting the cause of action *and within three years after such cause of action accrued*." 15 U.S.C. § 78r(c) (emphasis added).  Instead, they turn the Supreme Court's recent decision in *CALPERS v. ANZ Sec., Inc.*, 137 S. Ct. 2042 (2017), on its head by arguing that the three-year statute of repose "is a run-of-the-mill statute of limitations that is subject to tolling."  (Opp'n at 16.)

Courts—including the Third Circuit—widely recognize Section 18's three-year cutoff provision as a statute of repose.  *See, e.g.*, *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 200 (3d Cir. 2007) (describing "the repose period[] associated with [Section 18]"); *Klawonn v. YA Global Invs., L.P.*, 2016 WL 5923435, at *7 (D.N.J. May 6, 2016) (Section 18's one- and three-year time limitations are a "dual limitations/repose time limit.").  Indeed, plaintiffs bringing Section 18 claims in related actions before this Court describe the three-year limitation as a statute of repose.  *BloombergSen Partners Fund LP v. Valeant Pharmaceuticals Int'l, Inc*., No. 16-cv-7212, ECF No. 51 at 19.

*CALPERS* did not redefine statutes of repose or abrogate these cases.  In fact, the language from *CALPERS* upon which Plaintiffs rely, (Opp'n at 16), is actually a quotation from *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2182 (2014)—a three-year-old decision that did not alter courts' interpretations of Section 18's three-year cutoff as a "statute of repose."  *See, e.g.*, *Klawonn*, 2016 WL 5923435, at *7; *Dekalb*, 817 F.3d at 398 (analyzing *Waldburger* in discussing the "statute[] of repose" applicable to Section 18.).  Moreover, the quoted language is consistent with courts' interpretations of Section 18 as a statute of repose.  Plaintiffs insist that a statute of repose can be recognized as such because it begins from "defendants' last culpable

act." (Opp'n at 16.) Accordingly, courts have held that a Section 18 claim "accrues" not when purchases were made, but when the SEC filings themselves were made—i.e., defendants' last culpable act. *See Kelley v. Rambus, Inc.*, 2008 WL 1766942, at *5 (N.D. Cal. April 17, 2008) (barring claims based on filings more than three years old).[3]

If anything, *CALPERS* clarified that statutes with dual one year/three year time limits—like Section 18—require a finding "that the 3-year bar is a statute of repose." 137 S. Ct. at 2049. Plaintiffs make no attempt to square their theory with Section 18's dual limitations period or explain why a statute would contain both a one-year statute of limitations and an entirely superfluous three-year statute of limitations. The longer period only makes sense as a statute of repose.[4] Because the three-year cutoff is a statute of repose, *CALPERS* makes clear that "the *American Pipe* tolling rule . . . cannot extend the 3–year period." 137 S. Ct. at 2055.

Finally, *American Pipe* tolling would be unavailable in any event because the Class Action does not include Section 18 claims, and "the facts required to be pleaded and proved under section 10(b) are significantly different from the facts that give rise to section 18 claims." *Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*, 775 F. Supp. 2d 227, 246 (D. Mass. 2011) (holding that *American Pipe* tolling does not apply to a Section 18 claim where an earlier-filed class action asserted violations of Section 10(b), and not Section 18); *see also Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 54–55 (D. Mass. 1995) (same).

---

[3] *See also In re Adelphia Comc'ns Corp. Sec. & Deriv. Litig.*, 2005 WL 1679540, at *1 n.6 (S.D.N.Y. Jul. 18, 2005) ("§ 18 claims . . . are time-barred here where they are accrued from the earlier date of the registration statement."); *Bear Stearns*, 995 F. Supp. 2d at 307 (dismissing claims because the SEC filing was made more than three years before the complaint was filed).

[4] The single case Plaintiffs cite where Section 18's time limitations were tolled involved only the *one-year* statute of limitations. *See Broadway Gate Master Fund, Ltd. v. Ocwen Fin Corp.*, No. 16-cv-80056, slip op. at 23–24 (S.D. Fla. June 29, 2016).

## II.      PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIMS FAIL[5]

### A.      The Negligent Misrepresentation Claims Are Preempted By SLUSA

Plaintiffs do not dispute that their negligent misrepresentation claims are materially

identical to the claim dismissed in *Stichting*.  *See* Opp'n at 25 n.7; *Stitching Pensioenfonds ABP*

*v. Merck & Co.*, 2012 WL 3235783, at *16 (D.N.J. Aug. 1, 2012) (negligent misrepresentation

claim preempted where opt-out action "relate[s] to exactly the same subject matter" as class

action consolidated before the same judge).  Nor can they distinguish the authority upon which

*Stichting* relied, which held that "[t]he assignment of [an opt-out plaintiff's] related case to [the

same judge handling the related class action], where it would necessarily be handled in

coordination with the [other related] cases . . . is enough to make [the] action a 'covered class

action' [under] SLUSA."  *Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351, 376 (S.D.N.Y.

2010); (Opp'n at 25 n.7).

Instead, without authority of their own, Plaintiffs try to sweep away those decisions with

the bare assertion that they are "appallingly weak" and that *Stichting* "failed to apply the

appropriate canon of construction."  (Opp'n at 25 n.7 & 26.)  These arguments are unavailing.

The statutory language at issue is whether Plaintiffs' cases are "joined, consolidated, ***or***

***otherwise*** proceed[ing] as a single action for ***any*** purpose."  15 U.S.C. § 78bb(f)(5)(B)(ii)

(emphasis added).  Yet Plaintiffs ask this Court to limit SLUSA's application only to "formal

consolidation or joinder of an individual action."  (Opp'n at 25.)  As *Stichting* recognized, such

an interpretation "would . . . render [SLUSA]'s description of the latter category of covered

actions . . . entirely redundant."  2012 WL 3235783, at *14.  The canon of construction

underlying this finding is the "rule against surplusage"—that Courts should "give effect, if

---

[5] Plaintiffs do not dispute that a failure to plead reliance under Section 18 would require
dismissal of their negligent misrepresentation claims.  (*See* Opp'n at 28; Valeant Br. at 17.)

possible, to every clause and word of a statute." *Montclair v. Ramsdell*, 107 U.S. 147, 152

(1883).[6] *Stichting* is also entirely consistent with Third Circuit precedent requiring courts to

interpret SLUSA broadly—precedent Plaintiffs ignore. *See Rowinski v. Salomon Smith Barney*

*Inc.*, 398 F.3d 294, 298 (3d Cir. 2005) ("Congress envisioned a broad interpretation of SLUSA to

ensure the uniform application of federal fraud standards.").[7]

     Plaintiffs' assertion that SLUSA is inapplicable because they "have resisted Defendants'

attempts to formally coordinate them with the class action through a stay of proceedings or

otherwise," (Opp'n at 26), also fails.  While it is true Plaintiffs have resisted certain common-

sense case management proposals regarding scheduling matters, that does not avoid application

of SLUSA.  As an initial matter, Plaintiffs have coordinated briefing with the four other opt-out

actions—thereby consolidating their cases for "any purpose" with more than 50 plaintiffs.

Moreover, Plaintiffs' consent is not required for SLUSA to apply.  Nor should it be, as it would

perversely incentivize opt-out plaintiffs to engage in inefficient gamesmanship.  Courts reject

such maneuvers designed "to avoid the clear precepts of SLUSA and its preemption of state

law."  *See In re WorldCom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236, 244 (S.D.N.Y. 2014) ("[C]ourts

in this circuit have consistently rejected plaintiffs' attempts [to avoid SLUSA preemption]

---

[6] Plaintiffs invoke the canon of *ejusdem generis*, but that canon directs courts to maintain compatibility between enumerated lists in a statute; here, Plaintiffs explicitly argue that this Court should **disregard** the third statutory clause (beginning with "or otherwise proceeding").

[7] The authorities Plaintiffs cite do not hold that SLUSA requires formal consolidation.  For example, *Liberty Media Corp. v. Vivendi Universal, S.A.* only held that a vacatur of a formal consolidation order rendered the parties' dispute over that order "largely moot."  842 F. Supp. 2d 587, 593-94 (S.D.N.Y. 2012).  *Ventura v. AT&T Corp.* concerned a single individual action with no procedural overlap with the class action at issue.  2006 WL 2627979, at *1 (S.D.N.Y. Sept. 13, 2006).  Here, six individual actions are on an identical track with four other opt-out actions, which combined exceed SLUSA's 50-plaintiff threshold.  Lastly, *Instituto De Prevision Militar v. Merrill Lynch* did not *require* formal consolidation—it merely found SLUSA "easily satisfied" where formal consolidation occurred.  546 F.3d 1340, 1347 (11th Cir. 2008).

through artful pleading.").

### B.     Even If Not Preempted, Plaintiffs' Negligent Misrepresentation Claims Fail

Plaintiffs concede that they cannot distinguish *Prudential Ins. Co. of Am. v. Bank of Am.,
Nat'l Ass'n*, (Opp'n at 29), which, in dismissing a materially identical negligent
misrepresentation claim, "h[eld] that the unlimited class of all potential securities buyers is not
particularly foreseeable, within the meaning of [the New Jersey Supreme Court's decision in]
*People Express* [*Airlines v. Consol. Rail Corp.*, 100 N.J. 246 (1985)]."  2015 WL 502039, at *6
(D.N.J. Feb. 5, 2015).  Instead, Plaintiffs rely entirely on a handful of outdated cases in support
of their expansive reading of New Jersey law.  (Opp'n at 28.)[8]

Plaintiffs' assertion that these quarter-century old cases "are still good law," (Opp'n at
28), is incorrect.  The cases relied solely on the New Jersey Supreme Court's decision in *H.
Rosenblum, Inc. v. Adler*, 93 N.J. 324, 351 (1983), which articulated a broad standard of
foreseeability that was superseded by statute in 1995.  *See Cast Art Indus., LLC v. KPMG LLP*,
209 N.J. 208, 221 (2012) ("Only a few states adopted [*Rosenblum*'s] expansive foreseeability
test, and New Jersey has, through the passage of N.J.S.A. 2A:53A–25 in 1995, since abandoned
it.") (internal citations omitted).  Moreover, Plaintiffs' argument that *Prudential* "did [not]
excavate recent cases from the New Jersey state courts that undermined [Plaintiffs' authorities],"
(Opp'n at 29), is simply wrong.  *Prudential* expressly relied on *Kaufman v. I-Stat Corp.*, 735
A.2d 606 (N.J. App. Div. 1999) (*rev'd* in part on other grounds), which "decline[d] to adopt a
rule of liability which would create expansive potential liability for negligent misrepresentations
that may affect the price of securities" and adopted the Restatement of Torts' "more limited rule

---

[8] *Bogart v. Nat'l Community Banks, Inc*., 1992 WL 203788, at *10 (D.N.J. Apr. 25, 1992); *In re
Midlantic Corp. Sec. Litig*., 758 F. Supp. 226, 237 n.9 (D.N.J. 1990); *Urbach v. Sayles*, 779 F.
Supp. 351, 365 (D.N.J. 1991).  Plaintiffs also cite *In re ORFA Sec. Litig*., 654 F. Supp. 1449
(D.N.J. 1987), an irrelevant class certification decision.

of liability for negligent than for fraudulent misrepresentations." *Id.* at 612–13. The New Jersey Supreme Court affirmed the Appellate Division's dismissal of the negligent misrepresentation claim. *See Kaufman v. I-Stat Corp.*, 165 N.J. 94 (2000).

Lastly, Plaintiffs do not (and cannot) dispute *Prudential*'s observation that the New Jersey Supreme Court has looked to the Restatement of Torts in determining the scope of liability for negligent misrepresentation claims. *See* Opp'n at 30. This concession is dispositive, as the Restatement clarifies that negligent misrepresentation claims are available only to a "limited group of persons" for whom a defendant intends to supply information with respect to a transaction the defendant intends to influence. Restatement (Second) of Torts § 552.[9] This is why *Prudential*, consistent with the Restatement, made clear that negligent misrepresentation claims "permit[] liability only to *discrete* classes of plaintiffs" and not to the investing public as a whole. Restatement (Third) of Torts § 5, cmt. f.

## III. THE FACTS UNDERLYING PLAINTIFFS' ALLEGATIONS WERE DISCLOSED BY OCTOBER 30, 2015

Plaintiffs do not dispute that by October 30, 2015, Valeant itself had disclosed, among other things, (1) its ties to Philidor, (2) that it was terminating its relationship with Philidor, (3) that it had lost confidence in Philidor's practices, and (4) that it was conducting an internal investigation of serious allegations concerning Philidor and Valeant's relationship and related accounting practices. Nor can they dispute their own allegation that, among numerous other sources, an October 4, 2015 *New York Times* article "apprised [investors] that Valeant's steep revenue growth might be driven by something other than organic sales." (*Janus Am. Compl.* ¶

---

[9] Indeed, the most recent Restatement expressly clarifies that negligent misrepresentation claims do not apply to statements made to "all possible investors in the stock market" because "[p]otential liability to members of such a large audience would make a speaker's exposure hard to gauge." Restatement (Third) of Torts: Liab. for Econ. Harm § 5, cmt. f, TD No. 1 (2012).

142; Valeant Br. Ex. 8.)  Because these disclosures revealed the core of Plaintiffs' allegations—which concern Philidor and related accounting practices, and Valeant's "organic" growth—"[t]he 'total mix' of available information included the very information plaintiffs claim was concealed."  *White v. H & R Block, Inc.*, 2004 WL 1698628 at *12 (S.D.N.Y. July 28, 2004) (applying the "truth on the market" defense when relevant information was available in voluminous public records that "market professionals [would have] little trouble scouring").

Rather than dispute these facts, Plaintiffs argue that as a general principle of law, what they call the "truth-on-the-market" defense is a fact-specific inquiry.  (Opp'n at 18–19.)  While, in some cases, that might be true, here Plaintiffs' own pleadings demonstrate that the "truth" was revealed.  Plaintiffs' brief identifies only one relevant factual development after October 2015—Valeant's February 22, 2016 disclosure "that it expected to have to restate its financials." (Opp'n at 20.)[10]  Such an argument is the precise one that was considered and rejected in *Semerenko v. Cendant Corp.* in which the Third Circuit held that the announcement of "*potential* accounting irregularities" and the formation of a board committee "to perform an independent investigation" was sufficient to establish a truth-on-the-market defense despite the fact that the restatement itself had not yet been announced.  223 F.3d 165, 170–71, 181 (3d Cir. 2000) (emphasis added).  Not only is *Semerenko* controlling authority, it is the most factually on-point case submitted in the parties' briefing.  Plaintiffs try to distinguish *Semerenko* solely on the ground that the *Semerenko* announcement expressly stated that "previously issued financial statements and auditors' reports should not be relied upon" pending the internal investigation. *Id.* at 170; (Opp'n at 22).  This is a distinction without a difference—as in this case, the

---

[10] The other disclosures identified by Plaintiffs simply show that Valeant's business continued to suffer in early 2016 (Opp'n at 4)—they do not reveal any facts underlying their allegations.

*Semerenko* announcement involved "potential" accounting violations not fully brought to light until the subsequent restatement was issued.[11]

## CONCLUSION

Counts III and IV of each of the Complaints should be dismissed, and Count I of *Discovery Global*, *BlueMountain*, *VALIC*, and *Janus* must exclude post-October 2015 purchases.

---

[11] Here, Valeant's October 2015 disclosures and the surrounding news were conveyed with a sufficient "degree of intensity and credibility to counter-balance" the allegedly misleading statements. *In re Merck & Co., Inc.*, 2011 WL 3444199, at *35 (D.N.J. Aug. 8, 2011). For this reason, the cases Plaintiffs rely upon are distinguishable. For example, in *Merck*, the court held that the market was not even "aware of curative information" relied upon in the defendants' truth-on-the-market defense. *Id.*; *see also Pinker v. Roche Hldgs.*, 292 F.3d 361, 374 (3d Cir. 2002) ("truth" not revealed until the defendant had pled guilty to criminal charges); *Argent* 315 F. Supp. 2d at 678 ("Argent's case is indistinguishable from *Pinker*."); *In re Enzymotec Sec. Litig.*, 2015 WL 8784065, at *15 (D.N.J. Dec. 15, 2015) (truth-on-the-market defense turned on whether "the market understood" the impact of complex Chinese regulatory decisions).

/s/  *Richard Hernandez*
Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Telephone:  (973) 848-8615
Facsimile:  (973) 297-6615

Paul C. Curnin (*pro hac vice*)
Jonathan K. Youngwood (*pro hac vice*)
Craig S. Waldman (*pro hac vice*)
Daniel J. Stujenske (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Valeant Pharmaceuticals International, Inc.*

Dated: August 25, 2017